# Exhibit D

NCL
NATIONAL CONSUMERS LEAGUE
1701 K Street, NW, Suite 1200 Washington, DC 20006
Main: (202) 835-3323 Fax: (202) 835-0747 www.nclnet.org

October 22, 2025

Committee on Public Works and Operations
Council of the District of Columbia
1350 Pennsylvania Ave NW
District of Columbia, 20004

Good morning Chair Nadeau and members of the Committee,

My name is Eden Iscil and I am here on behalf of the National Consumers League (NCL), the nation's oldest consumer advocacy organization. NCL is a DC-based independent non-profit and I am a District resident. NCL also runs Fraud.org, where we receive thousands of consumer complaints each year and offer assistance to scam victims.

There are several pro-consumer provisions in the RESALE Act[1] that NCL supports, but we have concerns about other components of the bill. Nevertheless, we are grateful for this committee's work to make the ticket-buying experience better for consumers. The all-in pricing requirement is long overdue and directly addresses the problem of hidden fees that have plagued the ticket-buying experience. The ban on speculative ticketing is very important and will do much to prevent consumer harm and confusion. The refund protections, particularly in the event of fraud, are also a welcome advancement.

There are, however, a number of ways this legislation should be strengthened to better protect consumers.

1. Tickets should be fully refundable until the day of the event, if transferability is restricted. Currently, the legislation as written allows for tickets to be both non-transferable and non-refundable. This combination leaves a consumer on the hook for significant losses if an unexpected life event occurs that prevents a fan from attending an event they bought a ticket for months in advance.
2. The carveout for sporting events should be removed. Consumers deserve basic protections for their tickets, whether they are attending a concert or a football game. Indeed, NCL is currently suing the Washington Nationals under the District's Consumer Protection Procedures Act over the use of hidden junk fees that fans must pay to attend

[1] B26-0224, introduced April 9, 2025. https://lims.dccouncil.gov/Legislation/B26-0224

baseball games.[2] Fans are also unlikely to be aware that certain events are exempted from DC's legal protections. Reasonable consumers would expect that all live event tickets enjoy the same safeguards regardless of event type.

3. The District should examine how it might realistically enforce resale price caps. In other jurisdictions that implemented price caps for ticket resale, bad actors switched to less regulated platforms to sell their illegally marked-up tickets, like Facebook Marketplace, Craigslist, or eBay. A study from earlier this year found ticket fraud rates up to four-times higher in Ireland and Victoria, Australia (where policymakers had implemented price caps without sufficient resources to address movement to unregulated digital marketplaces) compared to the United Kingdom (where policymakers have not yet capped prices).[3] As fraud rates nationwide have reached billion-dollar highs, we want to avoid making that epidemic worse. The Council and the attorney general should consider how they can realistically implement and enforce the planned price caps while also preventing a surge in unregulated ticket sales. This will likely require greater resources for enforcement and coordination with private platforms where bad actors are likely to move to.

Ticketmaster continues to be a dominant monopoly force, one that NCL, the DC attorney general, and many other industry participants believe is anticompetitive. According to the federal government's monopolization lawsuit, Ticketmaster handles 80% of the primary ticketing for major venues in the nation and it represents a growing share of the resale market as well.[4] From 2019 to 2024 alone, the public spent more than $82 billion purchasing tickets through Ticketmaster.[5] Live Nation Entertainment (LNE)—Ticketmaster's parent company—controls 265 venues in North America, including more than 60 of the top 100 amphitheaters in the U.S.[6] Here at home, DC's most popular performance venues use Ticketmaster for their primary ticketing.[7]

Last month's lawsuit by the Federal Trade Commission against LNE brought to light a litany of outright lies by the company. In Congressional testimony and regulatory filings, LNE stated that it "does not turn a blind eye" to illegal resale practices and that it takes significant actions to stop bot activity. Yet federal investigators found in practice, LNE has been doing the exact opposite,

[2] "NCL sues Washington Nationals over junk fees not disclosed in advertised prices," *National Consumers League*, July 17, 2024. https://nclnet.org/ncl-sues-washington-nationals/

[3] "Ticket fraud: its impact and the cost of market regulation," *Bradshaw Advisory*, March 16, 2025. https://bradshawadvisory.com/insights/ticket-fraud-its-impact-and-the-cost-of-market-regulationnbsp

[4] *U.S. v. Live Nation Entertainment*, complaint filed May 23, 2024. https://www.justice.gov/atr/media/1353101/dl

[5] "FTC Sues Live Nation and Ticketmaster for Engaging in Illegal Ticket Resale Tactics and Deceiving Artists and Consumers about Price and Ticket Limits," *Federal Trade Commission*, September 18, 2025. https://www.ftc.gov/news-events/news/press-releases/2025/09/ftc-sues-live-nation-ticketmaster-engaging-illegal-ticket-resale-tactics-deceiving-artists-consumers

[6] *U.S. v. Live Nation Entertainment*. https://www.justice.gov/atr/media/1353101/dl

[7] The Anthem, Capital One Arena, Echostage, Lincoln Theatre, and the 9:30 Club rely on Ticketmaster for online primary ticketing.

with an internal email admitting that the monopoly "turn[s] a blind eye as a matter of policy," assisting lawbreakers at the expense of everyday consumers.[8]

Given the context of Live Nation's repeated monopolistic and lawbreaking behavior, we are concerned about potential unintended anti-competitive impacts resulting from components of this bill. For example, allowing ticketers to curate their own transferability terms could allow Ticketmaster to restrict the transferability of tickets to its own resale platform and no others. Additionally, continuing to allow ticket resale but capping prices could push out competitor exchanges that cannot operate under the reduced fee structure while Ticketmaster's secondary marketplace could remain in business as the rest of its monopoly operation is able to subsidize any underperformance in resale.

NCL appreciates the DC Council's attention to the pressing issues in live event ticketing. We look forward to working with you to ensure this legislation protects consumers to the fullest extent possible.

Sincerely,

Eden Iscil
edeni@nclnet.org
Senior Public Policy Manager
National Consumers League

[8] "Comments of Live Nation Entertainment, Inc." *Live Nation Entertainment*, July 8, 2025. https://www.regulations.gov/comment/ATR-2025-0002-3566; "Opening State of Joe Berchtold[,] President and Chief Financial Officer, Live Nation Entertainment, Inc." *United States Judiciary Committee*, January 24, 2023. https://www.judiciary.senate.gov/imo/media/doc/Testimony%20-%20Berchtold%20-%202023-01-24.pdf; "Written Testimony of Amy Howe[,] President and Chief Operating Officer[,] Ticketmaster, North America," *United States House of Representatives Committee on Energy and Commerce Oversight and Investigations Subcommittee*, February 26, 2020. https://www.congress.gov/116/meeting/house/110588/witnesses/HHRG-116-IF02-Wstate-HoweA-20200226.pdf; "FTC Sues Live Nation and Ticketmaster for Engaging in Illegal Ticket Resale Tactics and Deceiving Artists and Consumers about Price and Ticket Limits," *FTC*. https://www.ftc.gov/news-events/news/press-releases/2025/09/ftc-sues-live-nation-ticketmaster-engaging-illegal-ticket-resale-tactics-deceiving-artists-consumers