# Exhibit L

**Council of the District of Columbia**
**Committee on Public Works and Operations**
**Councilmember Brianne Nadeau, Chairperson**

**B26-0224, "Restricting Egregious Scalping Against Live Entertainment (RESALE) Amendment Act of 2025"**

**October 22, 2025**

**Testimony of Coalition for Ticket Fairness**

## Introduction

Good morning, Chairperson Nadeau and members of the Committee. My name is Dusty Brighton, and I am here on behalf of the Coalition for Ticket Fairness. Thank you for the opportunity to testify today on Bill 26-224.

We applaud the Council's pro-consumer focus and commitment to ensuring fair access to live entertainment. These are goals we strongly share, and we would welcome the opportunity to work with the Council to develop balanced, pro-consumer policies that truly expand fairness.

Although well-intended, certain provisions within the RESALE Act will have significant unintended consequences, most notably cementing Ticketmaster's indisputable monopoly in the ticketing market. To be sure, unless this legislation addresses the broader anti-competitive realities of the ticketing marketplace, in particular Ticketmaster's overwhelming dominance, it will certainly inflict additional harm on the very consumers that this legislation was envisioned to protect.

## The State of the Ticketing Market - Ticketmaster

For context, the ticketing market is adversely dominated by one actor – Ticketmaster, which is owned by Live Nation Entertainment Inc. Live Nation has a market capitalization of approximately $36 billion[1] and currently controls nearly 80% of the primary ticketing market in the United States.[2] This percentage of control is almost certainly higher in the District where Ticketmaster manages the ticketing services for I.M.P., which owns, the 9:30 Club, the Lincoln Theatre, the Atlantis, and the Anthem.[3]

Because of this dominance, Ticketmaster not only manages the vast majority of initial ticket sales, but also dictates the terms of those sales, what fees are charged, whether tickets can be transferred, and whether venues may work with any competing platform.

With its market share, Ticketmaster pressures artists and venues into exclusive contracts that foreclose rivals, reduce consumer choice, and inflate prices, exercising its monopolistic power.

---

[1] Yahoo Finance. (2025, September 30). *Live Nation Entertainment, Inc. (LYV) stock quote*. (CONFIRM)
[2] U.S. Dep't of Justice et al., Complaint at 2, *United States v. Live Nation Entm't, Inc. & Ticketmaster LLC*, No. 1:24-cv-03973 (S.D.N.Y. May 23, 2024).
[3] I.M.P. Concerts. "FAQ – Where Can I Purchase Tickets?" Accessed October 2, 2025.

Between 2019 and 2024, consumers spent more than $82 billion on Ticketmaster tickets,[4] including $16.4 billion in fees alone.[5] In short, when it comes to manipulating the ticketing market and injuring consumers, there is no single entity more culpable than Ticketmaster.

This is not just our view. It is the basis of multiple federal actions. In May 2024, under President Biden, the U.S. Department of Justice, joined by the Attorneys General of 30 states, including the District of Columbia, filed suit against Live Nation, alleging, among other matters, that Live Nation is guilty of (i) excessive fees and price inflation, (ii) restricting ticket transferability, and (iii) restricting competition.

In addition, just last month, the Federal Trade Commission, joined by seven states, brought yet another lawsuit against Live Nation, alleging deceptive and anti-competitive resale practices aimed at suppressing competition and leaving consumers with fewer choices and higher prices. Specifically, the FTC alleges that Live Nation (i) engages in hidden fees & deceptive pricing, (ii) conspires with select brokers to circumvent its own stated limitations on ticket purchases, which pushes consumers out of the primary market, (iii) fails to enforce the requirements of the federal Better Online Ticket Sales (BOTS) Act of 2016, even though it has the ability to do so.

Together, these lawsuits allege, among other things, a long pattern of deceptive pricing, profiting from the reseller market and bots, exclusionary contracts, and other forms of anticompetitive conduct.

As drafted, this legislation will do nothing to reduce Ticketmaster's market power. Indeed, it risks cementing this power by codifying policies that ultimately raise costs for fans while limiting alternatives.

Now, I'd like to turn my attention to certain provisions within the RESALE Act.

**Price Caps**

One of the central provisions of the RESALE Act is the imposition of a 10% cap on resale on "the total price of the initial ticket."[6] At first glance, this may sound consumer-friendly, but in reality, it does nothing to address the true driver of inflated costs, Ticketmaster's fees.

As drafted, the 10% cap applies only to resellers and only on the "total price of the initial ticket." This leaves Ticketmaster free to add unlimited fees on top of the initial ticket price. According to the FTC lawsuit, filed after the introduction of the RESALE Act, Ticketmaster's fees can reach **44% on top of the initial ticket price**.[7] That means resellers are capped at 10%, but Ticketmaster can still tack on fees four times higher, leaving fans with no protection against the real source of inflated prices.

---

[4] Fed. Trade Comm'n, Complaint at 6, *FTC v. Live Nation Entm't, Inc. & Ticketmaster LLC*, No. 2:25-cv-08884 (C.D. Cal. 2025).
[5] *Id.* at 17.
[6] Council of the District of Columbia, B26-0224, *Restricting Egregious Scalping Against Live Entertainment (RESALE) Amendment Act of 2025*, at 8 (2025).
[7] *FTC v. Live Nation Entm't, Inc.*, at 17.

As a result, the bill locks in Ticketmaster's broken pricing model. Consumers would remain exposed to unchecked charges, while independent resellers are punished under limits that do not apply to the dominant player.

In this hearing, you will hear from Professors Jennings and Happel, who will explain why price caps do not work, including how they drive consumers to unregulated platforms that fail to protect consumers. Equally important, the approach advanced in the legislation allows Ticketmaster to continue charging unlimited and unregulated fees, often far above the proposed 10% cap on resellers.

The CTF opposes price caps, particularly those that are applicable solely to resellers. Instead, we believe that the real solution is to require full price disclosure upfront, eliminate restrictions on transferability, and guarantee refunds from both primary sellers and resellers. We fully support consumers' right to know the complete "all in" cost of a ticket upfront, without hidden add-ons. We would also point the Council to examples of legislation in other states that adopt this approach.

**Transferability**

True consumer protection depends on free markets and transparency. That means ensuring fans can transfer or resell tickets without restrictions. Unfortunately, the bill's current structure opens the door for Ticketmaster to manipulate the process using their market power to restrict or pressure venues from allowing transferability, whether they want to or not.

Through Ticketmaster's "SafeTix" system, a rotating barcode tied to the Ticketmaster app, Ticketmaster claims to protect against fraud. In reality, according to the US Department of Justice, SafeTix prevents fans from transferring tickets outside of Ticketmaster's platform, forcing resale to occur only within its controlled exchange, where the company collects additional fees.[8]

As the DOJ lawsuit highlights, this practice locks fans into Ticketmaster's ecosystem, eliminates competition, and further inflates prices. This is another demonstration of the power Ticketmaster has to restrict and punish venues into only using their services. As drafted, the RESALE Act will permit Ticketmaster to utilize its market power to force restrictions on the transferability of tickets.

We support the right of consumers to transfer or resell their private property without being subjected to the Ticketmaster's predatory platform and excessive fees.

**Registration**

The CTF is open to a meaningful and appropriate registration system that applies to **both** primary sellers and resellers. However, the current language is overly burdensome for non-commercial resellers with respect to reporting requirements and bonding requirements, which may not bear any relationship to the economic activity engaged in.

[8] *United States v. Live Nation Entm't, Inc.*, at 43–45.

If the goal is to strengthen consumer protections, then the CTF respectfully suggests that registration requirements that apply to secondary sellers must also apply to primary sellers.

Finally, if the purpose of the registration process is to monitor the wellbeing of the ticketing market, CTF urges the Council to include disclosure requirements for venues and primary sellers, including exclusive venue contracts. The DOJ lawsuit details how Live Nation uses its control over promotions and venues to force artists and venues into long-term exclusive deals, foreclosing rivals and stifling competition.[9]

**Bots and Speculative Tickets**

On bots and speculative tickets, we are in support of bipartisan language included in the federal TICKET Act and the Better Online Ticket Sales (BOTS) Act of 2016.

We applaud the Council's effort to limit speculative tickets to protect consumers. We urge the Committee to adopt the language in the bipartisan federal TICKET Act, which passed the U.S. House (409–15).[10] That legislation prohibits the sale or advertisement of speculative tickets unless they are clearly labeled as such, requires them to be offered as a service (not a good), and mandates refunds if the tickets cannot be secured.

On bots, we support and encourage the committee to align with the federal BOTS Act. It's worth noting that Live Nation also publicly claims to be anti-bot, and supportive of strict limits on ticket purchases. In practice, however, the FTC found that Ticketmaster conspired with certain brokers to routinely exceed their sales limits. The lawsuit documented that, on Ticketmaster, just five brokers controlled more than 246,000 tickets across over 2,500 events. Internal emails revealed that Live Nation deliberately turned "a blind eye." Even worse, the company provided brokers with special software and reduced fees, making large-scale resales easier.[11]

This is not simply negligence; it is self-dealing. Ticketmaster profited from the very practices and bots it claims to oppose, using them to inflate resale activity on its own platform. That is why Ticketmaster cannot be trusted to police itself. Layering new rules onto its system without structural change will not solve the problem; it will legitimize the very problems that drive up prices and leave consumers with fewer choices.

We enthusiastically support the intention of this legislation: protecting fans and ensuring fairness. But as drafted, it does not promote competition, rather it entrenches Ticketmaster's monopoly. Price caps that ignore fees, restrictions on transferability, and uneven burdens on secondary sellers will only make the market less competitive and more costly for consumers.

**Conclusion**

It is true that some independent primary sellers operate without Ticketmaster, but they are the exception. Ticketmaster still controls close to 80% of the primary market, and that dominance

[9] *United States v. Live Nation Entm't, Inc. LLC*, at 4
[10] U.S. Congress. (n.d.). *H.R. 1402 (119th): Transparency in Charges for Key Events Ticketing Act (TICKET Act)*
[11] *FTC v. Live Nation Entm't, Inc. & Ticketmaster LLC*, at 40–45

defines the landscape. Those exceptions do not change the larger reality: the central issue before us, and the one we should all agree on, is protecting the consumer.

The real solution is to end the monopolistic practices of Ticketmaster and Live Nation, require full and transparent price disclosures, and establish fair rules that apply equally across the market.

You will hear today that secondary ticketing platforms like us are the problem. In reality, as the DOJ and FTC lawsuits confirm, those voices are often under pressure from Live Nation's overwhelming influence. The real barrier to a fair ticket market is not competition among resellers, it is the unchecked power of Ticketmaster.

Thank you for your time and consideration. I would be happy to answer any questions.