# Exhibit M

October 21, 2025

**NYASHA HOWARD**
Secretary to the Council
Council of the District of Columbia
1350 Pennsylvania Avenue, NW
Washington, D.C. 20004

cc: Charles Allen
Councilmember, Ward 6

**Re: Written Statement in Response to the "Restricting Egregious Scalping Against Live Entertainment (RESALE) Amendment Act of 2025"**

Dear Secretary Howard, Councilmember Allen, and Members of the Council,

Thank you for your efforts to protect consumers and promote fairness and transparency in the live entertainment ticketing marketplace. While I fully support several key provisions of the RESALE Amendment Act, particularly the ban on speculative ticket listings and a revised requirement for all sellers to register, and report, I am concerned that the proposed price cap on resale tickets could have unintended and harmful consequences for both consumers and the live event ecosystem.

**Opposition to the Resale Price Cap**

The proposed 10% cap on resale prices, while well-intentioned, would in practice reduce consumer choice, distort the market, and unintentionally reward the very primary sellers the bill aims to hold accountable.

Resale marketplaces like StubHub and Vivid Seats existed long before the emergence of bot-driven mass purchasing. They arose because fans needed options, the freedom to buy or sell tickets on their own terms, whether purchasing early for peace of mind or waiting until closer to an event when prices often drop. This competition creates flexibility and transparency, allowing consumers to decide when to buy, where to sit, and how much they're willing to pay.

A government-imposed price ceiling undermines these principles. When resale is artificially constrained, tickets simply shift back into private, unregulated channels—Craigslist, social media, or cash sales, where consumers lose access to protections such as verified transfers, secure payment methods, and guaranteed refunds. The result is a less transparent market and greater consumer risk, not less

Moreover, without corresponding price caps or disclosure requirements for primary marketplaces, the policy creates a fundamental inconsistency. Primary sellers already use dynamic pricing and "platinum" programs that raise prices far above initial face value, often by 100% or more, using the same demand-based logic that drives secondary pricing. To single out resale for price regulation, while allowing unlimited markups by the primary issuer, creates a two-tiered system that benefits large corporations at the expense of ordinary fans.

**Request for Clarification on "Tickets That Don't Match Their Description"**

The bill states that consumers are entitled to a refund when "the ticket does not conform to the description provided at the time of purchase." While I agree with the intent, this provision requires further clarification to avoid confusion or overreach.

Primary issuers routinely deliver tickets that do not conform to the original description. For example, a customer may receive an order confirmation stating they purchased seats in "Center Orchestra," but the actual ticket delivered may say "Orch Center," or "CORCH," or list a different section label format entirely. In such cases, the ticket is equivalent in value and location, but technically "does not conform to the description." Would this scenario constitute a violation under the Act?

Without clear language specifying that minor naming or formatting differences do not qualify as "non-conformance," the rule could expose both primary and secondary sellers to unnecessary liability and confusion. I respectfully request that the Council refine this section to define "does not match the description" as material discrepancies that affect seat location, event details, or ticket validity—not merely differences in labeling or nomenclature.

**Support for a Ban on Speculative Tickets, BOTS, and Registration**

I strongly support the ban on speculative ticket listings, any effort to improve the ticket buying experience and eliminate automated ticket purchasing or BOTS, and the registration of resellers **and** primary issuers. These provisions represent essential steps toward accountability and transparency in ticket sales.

I also strongly encourage the Council to expand the registration requirements to include not only resellers, but also primary marketplaces and ticket issuers, as well as secondary marketplaces. Every entity involved in the sale or resale of tickets should operate under the same framework of accountability and consumer protection. Expanding registration requirements will ensure a level playing field across the industry and create a comprehensive, transparent system where consumers know who they are buying from—whether it's a primary source or a secondary platform.

Requiring registration and bonding across all tiers of the market would give the Department of Licensing and Consumer Protection a clear view of how tickets move from initial release to final sale, helping identify fraudulent activity, price manipulation, or unfair practices regardless of where they originate.

**Conclusion**

The RESALE Amendment Act represents a significant step toward a fairer and more transparent ticketing system. However, I urge the Council to reconsider or remove the price cap provision, as it risks driving transactions underground, limiting choice, and inadvertently strengthening the dominant primary sellers who already engage in unrestricted price inflation.

Fairness should apply across the entire live event marketplace—primary and secondary alike. True consumer protection comes from transparency, accountability, and competition—not artificial price limits.

Thank you for your attention and for considering these concerns. I welcome the opportunity to engage further as this legislation is refined.

Sincerely,

**Ashlee Hoagland**
11320 Brandy Hall Lane
North Potomac, MD 20878
Ahoagland18@gmail.com
(240) 380-9197