# Exhibit N

October 22, 2025

The Honorable Brianne K. Nadeau
Chair, Committee on Public Works and Operations
Council of the District of Columbia
1350 Pennsylvania Avenue NW
Washington, DC 20004

**Re: Concerns with Anti-Competitive and Anti-Consumer Provisions in B26-224, the "Restricting Egregious Scalping Against Live Entertainment (RESALE) Amendment Act of 2025"**

Dear Chair Nadeau,

On behalf of StubHub, the leading global secondary ticketing marketplace for live events, I write to respectfully express our concerns with B26-224, the so-called "Restricting Egregious Scalping Against Live Entertainment (RESALE) Amendment Act of 2025." While StubHub supports the Council's goal of protecting consumers and improving transparency in live event ticketing, several provisions in the current draft would unintentionally harm consumers, suppress competition, and strengthen the market dominance of Live Nation and its subsidiary Ticketmaster - all to the detriment of D.C. residents.

We believe that fair, transparent, and competitive ticketing markets best serve fans. StubHub welcomes the opportunity to work with you and your colleagues to advance reforms that protect consumers, promote innovation, and ensure that the District remains a model for fair ticketing policy.

***Background on StubHub***
Founded in 2000, StubHub revolutionized the ticket resale marketplace by providing a safe, transparent, and trusted platform for fans to buy and sell tickets. StubHub's FanProtect Guarantee ensures that buyers and sellers can transact with confidence, knowing that if something goes wrong with a transaction, every order is protected and our customer service team is available to resolve the issue.

StubHub does not set ticket prices or control ticket supply. Sellers, 99% of which are everyday fans, set prices and buyers decide what they are willing to pay. The service fees StubHub collects fund customer service, fraud prevention, and the FanProtect Guarantee, ensuring the safety and reliability of every purchase.

In 2024 alone, StubHub connected more than 23,000 D.C. residents and 150,000 visitors from all 50 states and over 100 countries to live events. On StubHub, 40% of concert tickets sold for under $50 while nearly 80 percent of concert tickets sold on StubHub were priced under $100, demonstrating that resale provides access, affordability, and flexibility to fans across income levels.

***The Real Problem: Lack of Competition in the Ticketing Market***

Many of the frustrations consumers face when purchasing tickets stem not from resale, but from a lack of competition in the primary ticketing market. As the U.S. Department of Justice detailed in its 2024 complaint[1] against Live Nation Entertainment, Ticketmaster controls approximately 80 percent of major concert venue primary ticketing in the United States. The company also manages artists, promotes tours, and operates venues, giving it control over nearly every step of the ticket-buying process.

This vertical integration allows one company to determine:

- Who can buy tickets and when
- How many tickets are released to the public
- Whether fans can transfer or resell tickets
- Which platforms consumers are permitted to use

Unfortunately, the RESALE Act as introduced would not correct this imbalance. In fact, several provisions would entrench it by codifying restrictive transfer practices, imposing fee and price caps, and adding burdensome new requirements on legitimate marketplaces.

***<u>Concerns and Recommended Changes</u>***

**1. Eliminate Ineffective Price and Fee Caps**

The proposed 10% cap on resale prices and marketplace fees would harm consumers by increasing fraud, reducing transparency, and pushing ticket sales into unsafe, unregulated markets. Comparative market evidence shows that capping resale prices does not make tickets cheaper in practice. Instead, it drives buyers and sellers to channels such as social media and classified sites where there are no guarantees, no refunds, and no accountability.

---

[1] United States v. Live Nation Ent., Inc. and Ticketmaster L.L.C., No. 1:24-cv-03973 (S.D.N.Y. Aug. 19, 2024), *https://www.justice.gov/atr/media/1353101/dl*.

A 2025 study[2] of global ticketing markets found that fraud rates were almost **four times higher** in jurisdictions with resale price caps than in uncapped markets. The study concluded that when lawful marketplaces are constrained, sellers migrate to unregulated venues where consumers have no protections and bad actors face little to no consequences. The District should avoid repeating these mistakes.

Efforts to impose arbitrary, government-mandated fee caps, often advanced by incumbent ticketing companies and special interest groups, risk compounding the very problems they claim to solve. StubHub and other marketplaces, ticket sellers, and resellers are already required to clearly disclose all mandatory fees upfront. In this context, blanket fee caps for ticket resale platforms do not enhance consumer protection. Instead, they increase fraud risk, threaten to reduce service quality, create new confusion for fans, and can stifle innovation.

The primary market, which includes the vertically integrated company Live Nation Entertainment and their subsidiary, Ticketmaster, will retain the ability to shift or conceal costs through dynamic pricing, presales, and bundled offerings. Meanwhile, fee caps applied only to resale marketplaces would therefore disadvantage transparent, pro-consumer platforms while further consolidating power in the hands of the dominant player. As the U.S. Government Accountability Office has reported[3], a lack of transparency and competition in the primary market continues to hinder consumers. True reform should prioritize consumer choice and open competition, not policies that risk entrenching monopoly control over the live event ecosystem.

In short, price and fee caps do not reduce costs for fans - they reduce safety and accountability. Restricting only secondary marketplaces while allowing primary sellers to maintain opaque pricing structures is discriminatory and anti-competitive. The D.C. Council should reject these provisions and instead focus on policies that promote transparency, competition, and meaningful consumer protection.

**2. Remove Transferability Loophole**

While the RESALE Act appears to protect a consumer's right to transfer tickets, it contains a major loophole that allows primary sellers to restrict transfer "if disclosed" at the time of sale. This provision would effectively codify Ticketmaster's "SafeTix" system into District law and allow it to continue blocking resale on competing platforms.

---

[2] Bradshaw Advisory (2025), Ticket Fraud: Its Impact and the Cost of Market Regulation, *https://bradshawadvisory.com/insights/ticket-fraud-its-impact-and-the-cost-of-market-regulationnbsp*.

[3] United States Government Accountability Office, GAO-18-347, "Congressional Requesters: Event Ticket Sales Market Characteristics and Consumer Protection Issues" (April 2018), available at: *https://www.gao.gov/products/gao-18-347*.

In its amended 2024 complaint against Live Nation, the Department of Justice, joined by D.C. Attorney General Schwalb and 39 other state Attorneys General, alleged that these monopolistic practices, including the use of technology and anti-consumer terms and conditions, harm competition and consumers. The complaint specifically cites Ticketmaster's SafeTix technology as an example of exclusionary conduct, stating:

> *"SafeTix technology requires that all transfers occur within the Ticketmaster platform. This technology makes it harder for fans to use rivals' secondary ticketing platforms to resell tickets, pushing them instead to the Ticketmaster resale platform.[4]"*

The Council should not enshrine in statute the same restrictive practices now being challenged by the federal government and nearly every state Attorney General as anticompetitive and unlawful.

Consumers should have clear ownership rights in the tickets they purchase. Public policy should prohibit the use of terms and conditions or technologies that restrict a fan's ability to transfer a ticket they have lawfully bought. Neither the seller nor the buyer should face penalties for transferring or purchasing a legitimately resold ticket.

The broader ticketing industry has shown little willingness to protect transferability without clear legislative direction. Fortunately, several states – including New York[5], Connecticut[6], Virginia[7], and Utah[8] – have enacted laws requiring that consumers are offered the option to purchase a freely transferable ticket at the point of sale. Additionally, Illinois[9] and Colorado[10] have enacted laws prohibiting restrictions on ticket transferability altogether.

Every consumer should have the right to resell, gift, or donate their ticket on the platform of their choice. Transfer restrictions such as those permitted under the RESALE Act would strengthen monopoly power, reduce competition, and diminish consumer flexibility.

**3. Modify Unworkable Marketplace Liability and Licensing Provisions**

The bill imposes broad liability on marketplaces to ensure compliance with multiple provisions and requires licensing for individuals selling more than 50 tickets annually with oversight of

---

[4] Amended Complaint, U.S. v. Live Nation at 36
[5] New York Arts & Cultural Affairs Law § 25.30
[6] Connecticut General Statutes § 53-289a
[7] Virginia Code Annotated § 59.1-466.6
[8] Utah Code Ann. § 13-56-201
[9] Illinois Compiled Statutes 815 ILCS 414
[10] Colorado Revised Statute § 6-1-718

those individuals placed on private businesses. These provisions unfairly burden legitimate resale marketplaces while giving primary ticketing companies that operate their own ticket resale platform and have direct access to ticket data a structural advantage.

Marketplaces cannot reasonably verify compliance for independent, third-party sellers at scale. These requirements would increase costs, reduce competition, and discourage participation by ordinary fans.

**4. Protect Fans from Retaliation**
The bill's requirement that resellers disclose exact seat numbers exposes them to retaliation from event organizers, venues, and ticketing companies that operate competing resale sites. D.C. should include anti-retaliation protections, ensuring that no fan is denied entry or penalized for buying or selling a lawful ticket on a competing platform.

**5. Align Refund and All-In Pricing Requirements with Federal Standards**
StubHub already provides full refunds for canceled or invalid tickets through our FanProtect Guarantee. The bill's vague "nonconforming ticket" standard triggering a refund requirement could create confusion and disputes over minor issues beyond a seller's control.

Similarly, D.C. should align its all-in pricing provisions with the federal standard, adopted in May 2025, which ensures consistent, clear disclosures for all ticket sellers.

***What Real Reform Looks Like***
Rather than adopting measures that weaken consumer protections, StubHub urges the Council to consider reforms that promote competition, transparency, and fairness. Specifically, we recommend that D.C.:

1. **Guarantee Transferability:** Protect every fan's right to resell, gift, or donate tickets they lawfully purchased.
2. **Require Holdback Disclosures:** Mandate public disclosures on how tickets are allocated for sale to the general public as well as transparency on how they will be priced to provide critical information that can help consumers make informed purchasing decisions.
3. **Promote Interoperability/Open Ticketing:** Allow verified ticket data to move securely between ticketing platforms to detect fraud, curtail bots and speculative listings, and empower consumer choice.
4. **Prohibit Long-Term Exclusive Contracts:** Limit exclusive ticketing deals between venues and primary sellers to foster competition.

5. **Strengthen Anti-Bot Enforcement:** Build upon the proposed bots provisions in the RESALE Act through requirements for ticket issuers to report incidents of known bots usage to the Attorney General to enhance enforcement.
6. **Adopt Right-of-Entry Protections:** Guarantee that fans cannot be denied admission or restricted from reselling their tickets solely because they used a lawful resale marketplace.

These reforms would provide real consumer protection while promoting transparency and competition in the live event marketplace.

***<u>Conclusion</u>***

We appreciate your consideration of these concerns. StubHub shares the Council's goal of protecting consumers and ensuring fair access to live entertainment. However, the RESALE Act, as drafted, would unintentionally cement the dominance of existing monopolies, restrict consumer choice, and make tickets harder, not easier, to obtain.

We urge the Committee to amend or oppose the bill in its current form and instead pursue meaningful, pro-consumer reforms that promote transparency and competition in the live entertainment marketplace.

Thank you for your attention to this important issue. StubHub looks forward to working with you and your staff on constructive solutions that put fans first.